UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FANG LIU,

                Plaintiff,                  Case No. 19-cv-10087

v.                                     Paul D. Borman
                                     United States District Judge

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____/

## OPINION AND ORDER:
## (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 13); (2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 16); AND (3) AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Fang Liu brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") that denied his application for disability insurance benefits pursuant to the Social Security Act (the "Act"). The parties have filed cross-motions for summary judgment. (ECF Nos. 13, 16). For the reasons set forth below, the Court finds that the Administrative Law Judge's conclusion that Plaintiff is not disabled under the Act is supported by substantial evidence and was made pursuant to the proper legal standards. Therefore, the Court will deny the Plaintiff's motion

for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the Commissioner's decision.

# I. BACKGROUND

## A.   Procedural History

Plaintiff filed his application for a period of disability and disability insurance benefits ("DIB") on May 16, 2016.  (Tr. 155-56.)  Plaintiff claimed disability beginning on December 30, 2015, based on depression, short-term memory loss, anxiety, a sinus infection, hypertension, and back pain. (Tr. 71-72.)  This claim was initially denied on September 27, 2016 (Tr. 87-103), and Plaintiff then requested a hearing. (Tr. 104-05).  On March 28, 2018, Administrative Law Judge ("ALJ") Anthony R. Smereka held a hearing during which Plaintiff appeared and testified. (Tr. 36-69.)  Plaintiff was represented by a non-attorney representative at the hearing and a vocational expert, Larissa A. Boase, also appeared and testified.  (*Id*.)

On May 4, 2018, ALJ Smereka issued his decision and found that Plaintiff was not disabled because he is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  (Tr. 20-30.)  This decision became the Commissioner's final decision when the Appeals Council declined Plaintiff's request for review on November 26, 2018.  (Tr. 1-6.)  Plaintiff then filed the present action with this Court on January 10, 2019.  (ECF No. 1, Compl.)

2

**B.     Medical History**

**1.     Mental Health Treatment**

Plaintiff presented to Hanumaiah Bandla, M.D. at Hegira Programs for a psychiatric evaluation in December 2015 and reported depression.  (Tr. 255-60.)  On examination, Dr. Bandla found impaired concentration, depressed mood, distractible attention, and impaired short-term memory, but normal speech, superior intellectual functioning, adequate judgment, adequate impulse control, and cooperative attitude. (*Id.*)   Dr. Bandla assessed Plaintiff with depression, prescribed Celexa, and recommended outpatient therapy.  (*Id.*)  Plaintiff presented to Dr. Bandla again in January 2016 for a medication review, and reported that he still felt depressed and complained that his medication caused dizziness, decreased appetite, gastric discomfort and dry mouth.  (Tr. 272-74.)  Dr. Bandla noted, upon examination, that Plaintiff was depressed and anxious, but that his psychomotor activity is normal, thought process was organized and goal directed, he maintained attention and concentration, had good recent and remote memory and good judgment and insight, and recommended changing his medication to Wellbutrin and continuing therapy. (*Id.*)

Plaintiff underwent psychological testing by Demetrius E. Ford, Psy. D., at Professional Outreach Counseling Service, P.C. ("POCS") on January 28, 2016 "to address concerns for Memory and ADHD[.]"   (Tr. 276-81.)   The examiner

3

administered multiple intellectual tests and concluded that Plaintiff had normal mental status and an average IQ of 93, but noted that Plaintiff had multiple situational stressors, including his son's college admission (not getting into the college of his choice), his father's death, and work and family stressors, and assessed Plaintiff with "moderate disability." (*Id.*)  Dr. Ford assessed Bipolar I Depression, Severe, Spouse-Relational Problems, and Post-traumatic Stress Disorder, and recommended marital counseling, occupational assistance, and individual counseling. (Tr. 281.)

Dr. Bandla saw Plaintiff again in March 2016 and Plaintiff complained that he was still unhappy and had difficulty sleeping and poor appetite. (Tr. 303.)  Dr. Bandla observed that Plaintiff was anxious and hyperverbal, but assessed him with a generally normal mental status examination and increased Plaintiff's dosage of Wellbutrin. (Tr. 302-04.)  Dr. Bandla also noted that he did not agree with the prior diagnosis of bipolar disorder. (Tr. 303.)  Plaintiff returned to Dr. Bandla's practice in April, May, June and July 2016, and continued to complain of memory loss, poor concentration, and depression. (Tr. 372-73, 376-77, 379-80, 383, 386.)  Mental status examinations by providers during those visits, including Alice Moon, P.A., revealed depressed mood, but were otherwise benign. (*Id.*)  Plaintiff reported that he was eating and sleeping well, and had a 40 percent improvement in symptoms with Abilify in May 2016 (Tr 377), and his depression symptoms were mild,

although he continued to worry about memory loss and difficulty focusing, in June 2016. (Tr. 380.) In July 2016, Patricia St. Marie, PA-C, wrote that Plaintiff's recent IQ score of 98 was incongruent with Plaintiff's master's degree in engineering, "as it is very competitive and only the brightest students are accepted into those programs," and noted that an examining psychiatrist, Dr. Chang, "postulates that since there is a major language barrier, [Plaintiff] did not understand the questions well enough to give an accurate assessment of his IQ, and/or his depression was clouding his ability to answer correctly." (Tr. 386.) Dr. Chang recommended a neurological workup from a doctor who speaks Plaintiff's language and dialect, followed by a psychological evaluation by a practitioner who speaks Plaintiff's language and dialect. (*Id.*)

Plaintiff presented for a neurological examination by Nancy Jingyang Cao, M.D., Ph.D., in September 2016. (Tr. 392-94.) Plaintiff told Dr. Cao that he has difficulty finding words and tends to lose his train of thought, but denied behavior changes, previous strokes or present difficulties driving. (Tr. 392.) Dr. Cao found a flat/anxious affect but generally normal short- and long-term memory, attention, registration and concentration, and normal motor function (including gait, station, and strength), sensation, coordination and reflexes. (TR. 393.) Dr. Cao assessed Plaintiff with mild ADD, depression, and anxiety and recommended mental health treatment. (Tr. 393.)

Plaintiff was seen by a variety of non-physician providers at POCS Mental Health, approximately once per month, between March 2016 and March 2018, but the records include no narrative history or findings from mental status examinations. (Tr. 453-62.)

### 2. Physical Treatment

Plaintiff's primary care physician between January 2016 and June 2016, and again in June 2017 was Dr. Robert Vartabedian, M.D. (Tr. 283-301, 331-62, 397-414.) Dr. Vartabedian's physical examination findings in January, February and March 2016 were generally benign. (Tr. 341, 343, 345, 349-52.) Plaintiff complained of back pain, brought on by long periods of standing, in May 2016, and examination revealed no deformity or tenderness, good range of motion in the hips, 5/5 motor strength, normal reflexes, and negative straight leg raising. (Tr. 338-39.) Dr. Vartabedian ordered a course of physical therapy, but noted in June 2016 that Plaintiff failed to follow through on physical therapy, that a physical examination was normal, and that Plaintiff did not report any current symptoms. (Tr. 335-36, 339.) Plaintiff returned to Dr. Vartabedian in June 2017 for an annual check-up, complained that he continued to experience memory problems related to his depression, and denied any physical symptoms other than fatigue. (Tr. 399-400.)

Plaintiff treated with Reza Ali, M.D., from November 2017 through March 2018. (Tr. 422-73.) Dr. Ali's physical and mental status examinations were

6

generally benign in November and December 2017, and Plaintiff denied all physical and mental symptoms in December 2017. (Tr. 463-64, 466-67, 470-73.) Plaintiff complained to Dr. Ali in March 2018 of worsening knee pain over the past year, but denied joint instability, locking, decreased mobility, numbness, weakness or tingling. (Tr. 422-23.) Dr. Ali found full flexion but limited extension of the left knee, secondary to pain, and noted a limping gait as well as mild swelling, mild tenderness, and mild crepitus. (Tr. 425-26.) Bilateral x-rays of Plaintiff's left knee showed no arthritis, acute disease processes or other abnormalities. (Tr. 428.)

### 3. Medical Opinions

In September 2016, State agency medical consultant Quan Nguyen, M.D. reviewed Plaintiff's medical record and opined that none of Plaintiff's physical impairments were severe. (Tr. 75.)

Also in September 2016, State agency consultant James Tripp, Ed.D., reviewed the available record evidence related to Plaintiff's mental impairments and opined that Plaintiff would experience mild restriction of activities of daily living, mild difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence and pace, and that Plaintiff retained the capacity to sustain simple, unskilled work. (Tr. 76-80.)

In March 2016, Katie Furton, MA, TLLP, wrote in a letter in connection with Plaintiff's application for employer-sponsored short-term disability benefits, that Plaintiff:

> presents with a variety of severe symptoms such as … uncontrollable crying, extreme anxiety, guilt and shame due to his current medical and mental status.  My client also reports symptoms such as eating and sleep disturbances, significant problems with memory, lack of interest and motivation in personal pleasures, severe isolation and decrease in energy.  These severe symptoms have significantly impacted Fang Liu's ability to engage and enjoy his daily life activities, including confidently performing his work obligations.

(Tr. 282.)  Ms. Furton further noted that she is "not the medical professional who established the need for disability" and that she has "not evaluated Fang Liu in terms of limitations or symptom severity in conjunction with [the] ability to perform his daily working activities."  (Tr. 282.)

In November 2017, Emily Rachal, NP-C, completed a pre-filled "Request for Reasonable Accommodation" form provided by Plaintiff's employer.  (Tr. 388-90.)[1] She wrote that Plaintiff has difficulty sustaining focus, remembering instructions and paying attention, and recommended continuing his leave of absence from work "to try a new medication to see if this has a positive impact on memory."  (*Id.*)

---

[1]Ms. Rachal is incorrectly referred to in the transcript index and the ALJ's opinion as "Eve Rachael" and/or "Emily Rachel."  (Tr. Index at 2-3; Tr. 28.)  However, the underlying practice records identify her as "Emily Rachal."  (Tr. 432.)

### C.    Plaintiff's Testimony and Function Report

At the hearing, Plaintiff testified that he emigrated from China to the United State in 1989, and that he received a college degree in China and a master's degree in engineering in the United States.  (Tr. 39-40.)  He last worked in 2015 as a transmission line engineer, with supervisory responsibilities, and testified that he stopped working when he allowed an engineer he supervised to release a formal presentation to a potential client, without Plaintiff having reviewed it, and the client complained and Plaintiff was blamed for not properly supervising his engineers.  (Tr. 40-41, 48-49.)  He then realized that his memory had become "an issue."  (Tr. 49.)

Plaintiff testified that he has difficulties with memory, attention and concentration and has also developed a fear of crowds and isolates because of fear that others will ask him about his job status or his family.  (Tr. 46-47.)  He said that his anti-depressant medication causes side effects of dry mouth, night sweats, and dizziness, and that he has poor coordination, which caused him to slip and hurt his knee, although it was not severe.  (Tr. 51, 62.)  He stated that he can sit for 30 minutes to one hour before needing to change positions, walk for two blocks before needing to stop and rest for five minutes, but cannot carry anything while walking because of his knees.  (Tr. 52-54.)

In his July 2016 Function Report, Plaintiff stated he experienced "severe depression with significant problems with memory and difficulty on focusing, poor

balance, lack of coordination, lack of energy, [and] eating and sleep disturbance," and complained of "dizziness, drowsiness, tiredness, blurred vision, and headache[s] from medication." (Tr. 204.) He listed his daily activities as including preparing meals, performing a morning exercise routine, reading books, magazines and newspapers, listening to music, shopping for groceries, surfing the internet, cleaning his house and yard, including mowing, repairs and maintenance, playing an instrument, and practicing yoga. (Tr. 205-07.) He stated he had no problems with his personal care, that he goes to the YMCA every day "for swimming, hot tub and sauna," and that he is able to walk for one mile before needing to rest, but complained of difficulties with seeing, memory, concentration, understanding, following instructions, and getting along with others. (Tr. 205-09.) He wrote: "I can't handle any stress any more. My depress[s]ion was mainly caused by work related stress." (Tr. 210).

### D.    Vocational Expert Testimony

The Vocational Expert ("VE"), Larissa Boase, identified and characterized Plaintiff's past relevant work as a transitional line engineer and as a civil structural engineer as skilled, light work, but performed at the sedentary to light exertional level. (Tr. 28.)

The ALJ set forth a series of hypotheticals question to the VE, but ultimately relied on one. (Tr. 64-67.) Specifically, the ALJ asked the VE to consider a person

of Plaintiff's age, education and work experience, with the ability to work at all exertional levels, but who should not be exposed to hazards, including work at unprotected heights or around dangerous machinery, no climbing of any ladders, ropes, or scaffolds, no driving a car in the course of employment, is restricted to unskilled work, meaning the ability to understand and carry out or remember simple instructions, to respond appropriately to supervision, coworkers and usual work situations and to deal with changes in a routine work setting, but also with a need for a highly structured work environment in terms of repetitiveness, no work with the general public, and no fast production pace work where the pace is set by others. (Tr. 64-65.)

Given these parameters, including the restriction to unskilled work, Plaintiff is unable to perform his past work, classified as skilled, as actually or generally performed.  (Tr. 28.)  However, the VE testified that, within the hypothetical parameters, a person would be capable of working in several representative positions, including: an inspector, SVP 2 light work, with 200,000 jobs nationally; a scrap sorter, SVP 2 light work, with 200,000 jobs nationally; a folder,  SVP 2 light work, with 100,000 jobs nationally; a furniture worker, SVP medium work, with 70,000 jobs nationally; a box bender, SVP 1 medium work, with 60,000 jobs nationally; and a cleaner, SVP 2 medium work, with 300,000 jobs nationally.  (Tr. 65-66.)

## II. STANDARD OF REVIEW AND LEGAL FRAMEWORK

"In Social Security cases, the Commissioner determines whether a claimant is disabled within the meaning of the Act and therefore entitled to benefits." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 42 U.S.C. § 405(h)). This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). However, the Court's review under this statute is limited to determining whether those findings are supported by substantial evidence and made pursuant to proper legal standards. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive ... "); *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (1994) ("Judicial review of the Secretary's decisions is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)); *see also McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (recognizing that substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal

quotations omitted).  "If the Commissioner's decision is supported by substantial evidence, we must defer to that decision, 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)).

This Court does not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip*, 25 F.3d at 286.  Indeed, "[i]t is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247; *see Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (providing that the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (citation omitted)).

Under the Act, Disability Insurance Benefits (for those qualifying wage earners who become disabled prior to the expiration of their insured status) and Supplemental Security Income "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "[D]isability" is defined in the Act, as the: "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)

(DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245

F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout

the first four steps . . . . If the analysis reaches the fifth step without a finding that

the claimant is not disabled, the burden transfers to the [Commissioner]."  *Preslar*

*v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

14

### A.   ALJ's Application of Legal Framework

At step one of the sequential analysis, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2020 and had not engaged in substantial gainful activity since December 30, 2015, the alleged onset date.  (Tr. 22).  At step two, he found that Plaintiff had the following severe impairments: depression with anxiety; but that Plaintiff's hypertension, vitamin B deficiency, intermittent complaints of back pain and alleged knee pain were non-severe.  (Tr. 23.).  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Tr. 23-25.)  The ALJ determined, pursuant to the paragraph B criteria, that Plaintiff had mild limitations in understanding, remembering and applying information; mild limitations in interacting with others; moderate limitations in maintaining concentration, persistence or pace; and mild limitations in adapting or managing oneself. (Tr. 24.) The ALJ further found that the paragraph C criteria were not satisfied.  (Tr. 24-25.)

The ALJ then found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional limitations but with the following nonexertional limitations:

> no hazards including work at unprotected heights or around dangerous
> moving machinery; and no climbing of any ladders, ropes or scaffolds;
> no driving in the course of employment; he is restricted to unskilled
> work meaning, the ability to understand, carry out, and remember

simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting[1]; a need for a highly structured work environment; no work with the general public; no fast production pace work where the pace is set by others.

(Tr. 25 & fn.1 (citing SSR 85-15).)

At steps four and five of the sequential analysis, based on the record evidence, including Plaintiff's medical records, his testimony, as well as the testimony of the VE, the ALJ found that Plaintiff could not return to his past relevant work, but could perform other jobs in the national economy, including the representative occupations of inspector, scrap sorter, folder, furniture cleaner, box bender, or cleaner. (Tr. 25-29.) Accordingly, the ALJ concluded that because Plaintiff retained the residual functional capacity to perform other jobs in the national economy, he was not disabled within the meaning of the Act from his alleged onset date through the date of the decision. (Tr. 30.)

## III. ANALYSIS

### A.    Analysis of Plaintiff's Mental and Physical Impairments

Plaintiff broadly contends in his first and second claims of error[2] that "the Commissioner improperly analyzed and/or failed to analyze [Plaintiff's] complaints of mental impairments, including: depression, anxiety, Post Traumatic Stress

---

[2] Plaintiff's arguments in his first and second claims of error overlap, focusing on the ALJ's evaluation of Plaintiff's subjective complaints, and therefore these claims of error will be considered together.

Disorder ("PTSD"), ADHD, panic attacks, short-term memory loss, bipolar disord[er], psychogenic amnesia, pseudodementia and concentration deficiency" and his "complaints of physical impairments, including: hypertension, daytime somnolence, vitamin D deficiency, left knee issues, and back pain." (Pl.'s Mot. at pp. 8-11, PgID 541-44.) He complains generally that the ALJ failed to properly consider his subjective complaints of pain and mental impairments and failed "to properly analyze the side effects from [his] medications on his ability to work as required." (Pl.'s Mot. at 10-11, PgID 543-44.)

Plaintiff bears the burden of proof at steps one through four of the sequential analysis, including proving his RFC. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (internal citations omitted); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require."). The Plaintiff's RFC "is the most he can still do despite his limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2); *see Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009).

The Social Security Regulations establish a two-step process for evaluating a claimant's subjective symptoms, including pain. 20 C.F.R. § 404.1529(a); SSR 16-

3p.[3] According to Social Security Ruling ("SSR") 16-3p, an ALJ must analyze the consistency of the claimant's statements with the other record evidence, considering his testimony about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). This analysis and the conclusions drawn from it – formerly termed a "credibility" determination – can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *see also Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (explaining that SSR 16-3p merely eliminated "the use of the word 'credibility' … to 'clarify the subjective symptoms evaluation is not an examination of an individual's character.'"). The ALJ must first confirm that objective medical evidence of the underlying condition exists, and then determine whether that condition could reasonably be expected to produce the alleged pain, considering other evidence, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side-effect of any medication; (5) treatment, other than medication received; (6) any means used to

---

[3] In his motion, Plaintiff cites to the predecessor ruling to SSR 16-3p, SSR 96-7p, which was superseded in March 2016. *See Cole v. Comm'r of Soc. Sec.*, No. 15-CV-13292, 2016 WL 3647982, at *11 n.2 (E.D. Mich. June 17, 2016) ("SSR 96-7p was rescinded and superseded by SSR 16-3p on March [16], 2016.").

relieve pain; and (7) other factors concerning functional limitations.  20 C.F.R. § 404.1529(c)(3); SSR 16-3p.

In this case, the ALJ set forth and followed the two-part standard described above.  He summarized Plaintiff's allegations, his hearing testimony and his Function Report, his daily activities, the objective medical evidence, his treatment history, and the opinion evidence, and found Plaintiff capable of performing a reduced range of work at all exertional levels.  (Tr. 25-28.)  The ALJ acknowledged Plaintiff's testimony in which he complained of memory loss, isolationist behavior, social anxiety, depression and difficulties sleeping, and of medication side effects such as dizziness, drowsiness, tiredness, blurred vision and headaches.  (Tr. 26-27, citing Tr. 46-62, 199-211.)  The ALJ also discussed Plaintiff's reports to his medical providers of depression, fatigue, memory loss, poor concentration, and situational stressors including job loss, marital difficulties, and his son's college acceptance issues.  (Tr. 26-28, citing Tr. 255-60, 276-81, 372-86, 392-94.)  The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  (Tr. 26.)

In making this determination, the ALJ relied on Plaintiff's own statements in his function report and in his hearing testimony.  (Tr. 26.)  Plaintiff indicated in his

function report that he could cook, clean, complete yard work, drive, walk, ride a bicycle, go out in public alone, shop in stores, that he enjoys swimming, reading, books, watching the news, and playing a Chinese instrument, and that he had no difficulties with personal care.  (Tr. 26, citing Tr. 199-211.) The ALJ further noted that Plaintiff testified at his hearing that he had no medical problems until he was given too many responsibilities as work, suggesting that his issues were with time constraints rather than memory and focus difficulties, and that, contrary to his claims of social isolation, he calls his mother and aunt in China three times per week to check on them.  (Tr. 26-26, citing Tr. 48-55.)  The ALJ found that Plaintiff "avoids people not due to fear, but rather due to difficulty responding to those who know him as to how he and his son are doing," which is "highlighted by [Plaintiff's] statement at the hearing that he avoids people asking him how he and his family are doing."  (Tr. 27.)  Plaintiff fails to address these daily activities in his motion, or explain how they support the severity of his alleged physical and mental symptoms. (Pl.'s Mot. at pp. 8-11, PgID 541-44.)   The ALJ properly relied on Plaintiff's function report and his hearing testimony in making his determination under SSR 16-3p.  *See Bowman v. Comm'r of Soc. Sec.*, 683 F. App'x 367, 376 (6th Cir. 2017) (substantial evidence supported ALJ's credibility determination based on plaintiff's function report and her descriptions of her daily activities); *Yackley v. Comm'r of Soc. Sec.*, No. 16-cv-14075, 2017 WL 3837274, at *11 (E.D. Mich. Aug. 31, 2017)

("[I]t is entirely appropriate for the ALJ to consider the claimant's daily activities, among other factors, when determining his work function – indeed, the regulations direct the ALJ to do so.").

The ALJ then went on to consider the objective medical evidence and found that it did not support the severity of Plaintiff's allegation of limitation.  (Tr. 27-28.) The ALJ provided a detailed summary of Plaintiff's medical record related to his mental impairments starting in December 2015 and noted that Plaintiff was prescribed medication for depression but that overall numerous benign examinations revealed only mild memory impairment and a mild limitation interacting with others. (Tr. 27, citing Tr. 256-58, 277, 303, 377, 380.)   While Plaintiff had previously complained of side effects to medications, in March 2016, he stated he had no side effect to his medication (Tr. 27, citing Tr. 303), and in May 2016 Plaintiff reported a 40 percent improvement in his mental symptoms with his medication.  (Tr. 27, citing Tr. 377.)  Plaintiff reported his depression was mild in June 2016 (Tr. 27, citing Tr. 380), and Plaintiff's neurological examination in September 2016 was generally normal, with findings of normal short- and long-term memory, attention, concentration and registration.  (Tr. 28, citing Tr. 393.)[4]

---

[4] The ALJ also states that the record contains no other mental health treatment between September 2016 and March 2018, at which time the record indicates normal psychiatric findings.  (Tr. 28, citing Tr. 421-28.)  As the Commissioner notes in its brief however, while there is no record of Plaintiff seeking treatment from a psychologist or psychiatrist during this time period, Plaintiff did attend counseling

The ALJ also considered Plaintiff's physical impairments and found they were not severe. (Tr. 24.) Although Plaintiff reported back pain in his application for benefits, the last medical records referring to back pain are dated in June 2016, and Plaintiff testified at the March 2018 hearing that his back pain had resolved. (Tr. 62, 336-37.) The ALJ also found that Plaintiff only reported knee pain in March 2018, and that "while it is noted that the onset of this problem is one year, there is no evidence of diagnosis or treatment for knee pain throughout the previous year," including "no imag[]ing or any other diagnostic testing to establish any chronic causes of [Plaintiff's] knee pain" and thus "the evidence does not support that this impairment would last 12 months and therefore it does not meet the durational requirement." (Tr. 23, citing Tr. 422-26.)

The record evidence recited by the ALJ provides substantial evidence supporting his decision to partly discount Plaintiff's symptoms. Plaintiff does not specifically allege that the ALJ made any factual mistakes or misstatements in his summary of the medical record evidence. Plaintiff's conclusory allegation that the ALJ "blatantly ignor[ed] findings and opinions" in the medical record, and his single-sentence contention that the Commissioner cannot "pick and choose" findings and opinions, fails because Plaintiff does not identify which records the ALJ

at POCS through March 2018. (Tr. 453-62.) However, those records do not contain any narrative history or findings from mental status examinations and thus no basis to find Plaintiff more limited due to his mental impairments. (*See id.*)

allegedly failed to analyze or ignored. *See DeLong v Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (noting that an allegation of "'cherry picking' the record … is seldom successful because crediting it would require a court to re-weigh the record evidence").  Plaintiff's contention that the Commissioner was required to utilize the standard Psychiatric Review Technique Form ("PRTF") fails to justify a remand, as an ALJ is not required to use a PRTF, but the Commissioner instead memorializes the step two and step three analysis in the Disability Determination Explanation ("DDE").  *See Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 362 (6th Cir. 2004) (ALJ not required to complete a psychiatric review technique form, but only required to discuss the factors in 20 C.F.R. § 416.902a(b)); *McBride v. Comm'r of Soc. Sec.*, No. 1:16-CV-708, 2017 WL 4230516, at *1 (S.D. Ohio Sept. 25, 2017) ("As explained by the Magistrate Judge, the ALJ was not required to create a new psychiatric review technique form, but could 'incorporate the pertinent findings and conclusions in her written decision based on the technique.'").

Plaintiff's complaint that the ALJ did not adequately consider Plaintiff's complaints that his medications caused side effects, including dizziness, sleep disturbances and daytime fatigue, and that the ALJ did not discuss a need for additional breaks or time off task limitations in his hypothetical questions to the VE fails to require a remand in this case.  As discussed above, the ALJ expressly considered Plaintiff's reports of side effects in his function report and to his doctor

in January 2016, and that he thereafter denied any side effect to his doctor in March 2016 when his medication was changed and otherwise failed to report side effects to his providers thereafter.  (Tr. 27, 273, 303, 391, 351, 399.)  The Court cannot "reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011); *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) ("Our task is not to reweigh the evidence. That is solely the province of the Secretary.") (citation omitted).  There is no basis to conclude that Plaintiff's complained-of side effects mandated a more restrictive RFC than found by the ALJ, and Plaintiff has failed to point to any objective findings mandating more restrictive findings.  *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665-66 (6th Cir. 2004) ("Although Essary testified that she suffered from dizziness and drowsiness as a result of her medications, Essary's medical records make no indication that Essary reported such side effects to any of her physicians.  Thus, based on the record before him, the ALJ did not err in finding that Essary suffered no adverse side effects from her medication.").

Plaintiff therefore has failed to demonstrate any error in the ALJ's analysis of Plaintiff's subjective complaints requiring remand.  The ALJ's review of the record evidence appears to have been quite thorough and his assessment was well within

the permissible range of reasoned outcome. *See Ashby v. Comm'r of Soc. Sec.*, No. 1:16-CV-11829, 2017 WL 9482460, at *9 (E.D. Mich. July 31, 2017), *report and recommendation adopted by* 2017 WL 3725476 (E.D. Mich. Aug. 30, 2017) ("The Court will neither re-weigh the evidence, ignore substantial evidence relied upon by the ALJ, nor second-guess an ALJ's findings which are well within the reasonable outcomes supported by the record as a whole."). Plaintiff's first and second claims of error are denied.

### B.   Analysis of the Opinion Evidence

Plaintiff argues that the ALJ failed to give appropriate weight to "Plaintiff's treating psychiatrist/therapist's opinions," and in fact "ignored two opinions[.]" (Pl.'s Mot. at pp. 9, 11-13, PgID 542, 544-46, citing ECF No. 11-7, PgID 319, 426 (Tr. 282, 389).) Plaintiff does not identify these treaters by name, but it appears that Plaintiff is referring to the March 21, 2016 opinion of Katie Furton, MA, TLLP and the November 3, 2017 opinion of Emily Rachal, NP. (Tr. 282 (PgID 319), and 389 (PgID 426).)

In his decision, the ALJ expressly considered and discussed the March 2016 opinion of Ms. Furton that Plaintiff's symptoms "have significantly impacted [h]is ability to engage and enjoy his daily life activities; including confidently performing his work obligations." (Tr. 28, citing Tr. 282.) The ALJ gave this opinion "little weight," finding it "conclusory and not based on any specific clinical finding" and

25

"not consistent with the evidence of record such as the claimant's normal mental status examination and average IQ as tested in January 2016." (Tr. 28.) He also expressly considered and discussed the November 2017 opinion of Ms. Rachal, "who continued [Plaintiff's] leave of absence … due to [Plaintiff] having difficulty with sustaining focus, attention, and remembering instructions." (Tr. 28, citing Tr. 389.) The ALJ gave this opinion "some weight," finding it consistent with Plaintiff being unable to return to skilled work, but otherwise found that Plaintiff's "mild mental status examination abnormalities and his reported improvement with treatment does not support a limitation from even simple, unskilled work." (Tr. 28.)

The ALJ also considered and discussed the other opinion evidence in the record. Specifically, he gave "great weight" to the opinions of State agency consultant, Quan Nguyen, M.D., who opined that Plaintiff's physical impairments are nonsevere, and State agency consultant James Tripp, EdD, who opined that Plaintiff retains the ability to sustain simple, unskilled work. (Tr. 28, citing Tr. 71-82.) The ALJ found these assessments consistent with the record evidence, including Plaintiff's minimal physical health treatment and mild mental status examinations, and Plaintiff's statements regarding his ability to perform a variety of activities of daily living. (Tr. 28.)

Plaintiff argues that the ALJ's analysis of Ms. Furton's and Ms. Rachal's opinions "was not done in accordance with the Regulations," and "[t]hough the ALJ

included some mental limitations in his RFC, they were far less restricting than those suggested by [Plaintiff's] treating professionals."  (Pl.'s Mot. at pp. 12-13, PgID 545-46.)  To the extent Plaintiff is arguing that Ms. Furton and Ms. Rachal should be considered "treating physicians," he is wrong.  Neither Ms. Furton nor Ms. Rachal meet the definition of an "acceptable medical source" under the controlling regulations, but rather are deemed "other sources." *See* 20 C.F.R. § 404.1529 (defining an "acceptable medical source" to exclude nurse practitioners (such as Ms. Rachal) and temporary limited license psychologists (such as Ms. Furton)); SSR 06-03p, 2006 WL 2329939, at *2 (defining "other sources" as "[m]edical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists[.]"); *see also Richardson v. Comm'r of Soc. Sec.*, No. 1:15-CV-0708, 2016 WL 3586623, at *5-6 (W.D. Mich. July 5, 2016) (holding that temporary limited psychologists are not acceptable medical sources because they are not "licensed or certified psychologists at the independent practice level").  The ALJ was not required to accord these "other source" opinions any special deference, but instead was merely required to consider those opinions and provide a sufficient explanation to allow a subsequent reviewer to follow his reasoning, which he did in this case.  *See* 20 C.F.R. § 404.1527(f)(2); *see also Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 248-49 (6th Cir. 2015) ("The opinion of a 'non-acceptable medical

source' is not entitled to any particular weight or deference – the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record."); *Brown v. Comm'r of Soc. Sec.*, No. 1:12-CV-1253, 2014 WL 1340748, at *6 (W.D. Mich. Apr. 3, 2014) ("The social security regulations require that information from other sources be considered.  This is not a demanding standard.").  The regulations state that "[t]he adjudicator generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *See* 20 C.F.R. § 404.1527(f)(2); *see also* SSR 06-03p. As explained above, the ALJ met that burden here, considering Ms. Furton's and Ms. Rachal's opinions and explaining why he gave those opinions "little weight" and "some weight," respectively.  Plaintiff fails to demonstrate a basis for reversal of the Commissioner's decision in this case.

Plaintiff also complains that the ALJ did not utilize a consultative examination to determine if less severe restrictions were more appropriate, but he provides no authority that the ALJ was required to do so.  (See Pl.'s Mot. at pp. 10, 13, PgID 543, 546.)   While the regulations *permit* the Commissioner to ask a claimant to attend a consultative examination, generally when the claimant's sources have not provided information or are "unable to provide certain tests or procedures…" 20

C.F.R. § 404.1517 ([W]e may ask you to have one or more physical or mental examinations or tests."), "the regulations 'do[] not *require* a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the [ALJ] to make the disability decision.'" *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)). "It follows then that the ALJ does not need to request the examination if he believes the record contains sufficient evidence to make RFC determinations." *Spuhler v. Comm'r of Soc. Sec.*, No. 2:13-CV-12272, 2014 WL 4855743, at *17 (E.D. Mich. June 17, 2014) (citation omitted, noting that "[c]ourts apply the abuse-of-discretion standard to review that decision"), *report and recommendation adopted in relevant part by* 2014 WL 4856153 (E.D. Mich. Sept. 30, 2014).

Here, the ALJ had the benefit of the opinion of the State agency psychologist, Dr. Tripp, which he gave great weight, as well as the benefit of Dr. Cao's neurological evaluation, Dr. Ford's January 2016 psychological evaluation, and the evaluation and treatment records of Dr. Bandla and his co-practitioners. (Tr. 26-28, citing Tr. 76-79, 255-60, 272-73, 276-81, 303-09, 372-86, 392-94.) Plaintiff did not seek an additional consultative examination prior to or after the hearing, and no further evidence was required to determine Plaintiff's RFC. Accordingly, the ALJ

did not abuse his discretion in not utilizing a consultative examiner, and Plaintiff's third claim of error is denied.

### C. The ALJ's Step Five Analysis

Plaintiff's "argument" in his final point of error consists solely of a three sentences:

> The Plaintiff argues to this Court that he established a *prima facie* showing of inability to perform his former occupations and all other work, based upon the SSA Exhibits and his testimony. Once a Claimant makes such a showing, the burden of production shifts to the SSA at Step #5 to prove that there are other jobs existing in significant numbers.
> **PLAINTIFF'S POSITION**: Where the SSA has failed to meet its burden of proof, the proper remedy is reversal and award of benefits rather than a remand.

Plaintiff's complete lack of argument development renders this claim of error waived. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997); *see also White Oak Prop. Dev., LLC v. Washington Twp.*, 606 F.3d 842, 850 (6th Cir. 2010) ("perfunctory" and "nebulous" argument renders an issue forfeited).

It is the Commissioner's burden at step five of the sequential analysis to show that the plaintiff possesses the capacity to perform other substantial gainful activity which exists in the national economy. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir.

2001).  This burden is met when there is "a finding supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted).  "A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments."  *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001).

As discussed above, the ALJ's RFC determination is supported by substantial evidence, and thus accurately portrays Plaintiff's limitations, and the ALJ provided a hypothetical question to the vocational expert that mirrors the RFC.  (Tr. 25, 64-65.)  The ALJ properly relied on the testimony of the vocational expert to determine at step five that there are jobs existing in significant numbers in the national economy available to an individual with Plaintiff's RFC.  (Tr. 29-30.)  Plaintiff fails to identify any error in the hypothetical questions posed to the vocational expert in this case, and accordingly Plaintiff's claim of error is rejected.[5]

---

[5] Plaintiff requests that "the case should be remanded to the Commissioner under both sentences four and six of [42 U.S.C. § 405(g)]."  (Pl.'s Mot. at p. 10, PgID 543.)  Plaintiff is not entitled to remand under sentence four for the reasons set forth above.  Further, Plaintiff is not entitled to remand under sentence six because he has not argued that the limited additional records submitted to the Appeals Council (Tr. 12-16) are material to his disability claim.  *See Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986) ("It is well established that the party seeking remand bears the burden of showing that remand is proper under Section 405.");  *see also Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 717 (6th Cir. 2013)

## IV. CONCLUSION

For all these reasons, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 13), GRANTS Defendant Commissioner's Motion for Summary Judgment (ECF No16), and AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

s/Paul D. Borman

Dated:  May 26, 2020                         Paul D. Borman
                                             United States District Judge

---

("To obtain a sentence-six remand, a claimant has the burden to establish that there is (1) new evidence; (2) which is material; and (3) that there is good cause for the failure to submit it to the ALJ.").  The Appeals Council did consider those additional records, dated May 15, 2018, and determined that they do not relate to the period of time at issue and thus do not affect the decision about whether Plaintiff was disabled during the relevant time period.  (Tr. 2.)